UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DONNIE SCHULTZ,

   Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

   Defendant.
_____/

Case No. 1:15-CV-0267

HON. GORDON J. QUIST

## OPINION

This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner). Plaintiff Donnie Schultz seeks review of the Commissioner's decision denying her claim for disability insurance benefits (DIB) under Title II of the Social Security Act.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health & Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1998). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 59 years of age on the date of the Administrative Law Judge's (ALJ) decision. (PageID.32, 55.) She had obtained a GED, and was previously employed as an assembler, packer, machine operator, and custodian. (PageID.82–83.) Plaintiff applied for benefits on May 24, 2012, alleging that she had been disabled since April 5, 2012, due to mini-strokes, sleep apnea, arthritis, insomnia, hypertension, depression, and irritable bowel syndrome. (PageID.89, 168–75.) Plaintiff's application was denied on July 6, 2012, after which time she requested a hearing before an ALJ. (PageID.102–05, 109–10.) On June 19, 2013, Plaintiff appeared with her counsel before ALJ Carol Guyton for an administrative hearing with testimony being offered by Plaintiff and a vocational expert (VE). (PageID.48–87.) In a written decision dated August 6, 2013, the ALJ determined that Plaintiff was not disabled. (PageID.32–47.) On January 13, 2015, the Appeals

Council declined to review the ALJ's decision, making it the Commissioner's final decision in the matter. (PageID.23–27.) Plaintiff subsequently initiated this action under 42 U.S.C. § 405(g).

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity (RFC). *See* 20 C.F.R. §§ 404.1545, 416.945.

Plaintiff has the burden of proving the existence and severity of limitations caused by her impairments and that she is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

ALJ Guyton determined Plaintiff's claim failed at the fourth step of the evaluation. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her

---

[1]
1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. § 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. § 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. § 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. § 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. § 404.1520(f)).

alleged disability onset date. (PageID.37.) At step two, the ALJ determined Plaintiff had the following severe impairments: (1) degenerative disc disease of the lumbar spine; and (2) degenerative disc disease of the cervical spine. (PageID.37.) At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments. (PageID.40.) At the fourth step, the ALJ found that Plaintiff retained the RFC based on all the impairments:

> to perform light work as defined in 20 CFR 404.1567(b) except: the claimant can lift twenty pounds occasionally and ten pounds frequently; sit, stand, and walk for six hours each in an eight hour[] workday; frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; occasionally climb ladders, ropes, or scaffolds; and avoid concentrated exposure to hazardous machinery and unprotected heights.

(PageID.40.)

Continuing with the fourth step, the ALJ determined that Plaintiff was capable of performing her past relevant work as an assembler, packer, and custodian as they were generally performed. (PageID.42.) Having made her disability determination at step four, the ALJ ended her analysis and concluded that Plaintiff was not disabled under the meaning of the Act. (PageID.42–43.)

## DISCUSSION

Plaintiff's Statement of Errors raises a single claim "[t]he ALJ's decision does not comply with Social Security rules and regulations." (PageID.474.) In so doing, Plaintiff has failed to comply with the Court's requirements for the filing of briefs. *See* Notice (ECF No. 8.)[2] Based on the arguments set forth in Plaintiff's brief, the Court gleans the following issues:

 1. The ALJ's step 2 determination that Plaintiff's mental impairments and migraines were not severe is unsupported by substantial evidence;

---

[2]The generic statement of errors provided by Plaintiff does not set forth "the specific errors of fact or law upon which Plaintiff seeks reversal or remand" as directed by the Court. Plaintiff's counsel is advised that future briefs which fail to do so may be stricken.

4

      2.      The ALJ erred at step 3 by failing to properly discuss whether Plaintiff met or equaled a listed impairment;

      3.      The ALJ's determination that Plaintiff retained the RFC for a limited amount of light work is unsupported by substantial evidence; and

      4.      The ALJ failed to properly assess Plaintiff's subjective allegations.

The Court will discuss the issues below.

**1.**

Plaintiff first argues the ALJ erred by failing to find that her "neurological impairments, depression, and migraines" were severe impairments, and failing to provide "objective medical evidence" in making that determination. (PageID.477–78.) The Court disagrees.

The Commissioner will find a severe impairment where such "significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). This determination is a "de minimis hurdle" used as an "administrative convenience to screen out claims that are totally groundless solely from a medical standpoint." *Higgs v. Bowen*, 880 F.2d 860, 862–63 (6th Cir. 1988). The Sixth Circuit has held, however, that where the ALJ finds the presence of a severe impairment at step two and proceeds to continue through the remaining steps of the analysis, the alleged failure to identify as severe some other impairment constitutes harmless error so long as the ALJ considered the entire medical record in rendering her decision. *See Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987); *Kirkland v. Comm'r of Soc. Sec.*, 528 F. App'x 425, 427 (6th Cir. 2013) ("so long as the ALJ considers all the individual's impairments, the failure to find additional severe impairments . . . does not constitute reversible error"). Such is the case here.

Contrary to Plaintiff's assertion, the ALJ provided a lengthy and well reasoned explanation—that included a discussion of the objective evidence—for why Plaintiff's other

5

impairments were not severe. Among other things, the ALJ noted that Plaintiff underwent an MRI, apparently to rule out multiple sclerosis, after complaining of lightheadedness, numbness, pain in the back of her head, and dizziness. (PageID.317, 324.) On April 4, 2012, Dr. Herman Sullivan stated that the scans were consistent with small vessel disease. Plaintiff was placed on Plavix and a period of observation followed. (PageID.326.) Only five days later, however, Plaintiff denied any dumbness, tingling, or memory issues to Dr. Amy Andersen. (PageID.337, 339.) Regarding Plaintiff's depression, the ALJ gave great weight to the opinion of State Agency consultant, Dr. Lisa Story, Ph.D, who determined that Plaintiff did not have a mental impairment. (PageID.92.) That said, the record also shows treatment that indicates Plaintiff's depression may satisfy the de minimis hurdle. Plaintiff attended six counseling sessions at Pine Rest Christian Mental Health Services. At the last visit, Plaintiff terminated her treatment, and the provider noted that there was a lack of further scheduled appointments made by Plaintiff, and that Plaintiff had failed to follow up on communications. The treatment summary noted that Plaintiff had problems with her primary support group, social environment, and in economic and occupational areas. Plaintiff was assigned a GAF score of 56 and was advised to continue her therapy. (PageID .405.)

At bottom, however, even if his impairment should have been characterized as a severe impairment, the ALJ's failure to do so does not merit relief. The ALJ found that Plaintiff suffered from a severe impairment and proceeded through the remaining steps of the sequential analysis. The ALJ began her RFC analysis by stating her obligation to consider all the claimant's impairments, including those that were not severe (PageID.36.), and nothing in the record indicates she failed to follow this obligation. Accordingly, Plaintiff's first claim of error is rejected.

## 2.

As step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of one of the listed impairments. (PageID.40.) The

6

ALJ stated that she had "considered all of the medical listings. No treating or examining physician had indicated findings that would satisfy the severity requirements of any listed impairments. Specifically, the undersigned considered the claimant's impairments under listings 1.00, but concluded that the claimant's impairments did not satisfy the requirements of the listed impairments." (PageID.40.) Plaintiff argues that such statement fails to provide an adequate explanation for why Plaintiff did not meet or equal a listing. (PageID.478.) The Court disagrees.

The Listing of Impairments, detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1, identifies various impairments which, if present to the severity detailed therein, result in a finding that the claimant is disabled. At step three of the sequential disability analysis, the ALJ must determine whether a claimant's impairments meet or equal a listed impairment. Here, the ALJ concluded that Plaintiff's impairments did not meet or medically equal any listed impairment. (PageID.40). While the ALJ explicitly stated Plaintiff did not satisfy the requirements of Section 1.00 of the Listings, the ALJ did not make any specific findings regarding this listing, or any other. (PageID.40.) Plaintiff is not arguing she meets the criteria of any listing, but rather that the ALJ's step 3 consideration was improper because she failed to explain why Plaintiff did not meet a listing.

The Sixth Circuit has concluded that the failure by an ALJ to provide extensive reasoning at step three is not, by itself, grounds for relief. *See Forrest v. Comm'r of Soc. Sec. of Soc. Sec.*, 591 F. App'x 359, 365 (6th Cir. 2014) ("[W]e decline Forrest's invitation to extend *Wilson* to require remand when the ALJ provides minimal reasoning at step three of the five-step inquiry, especially where Forrest did not argue at the hearing that he met a particular listing"). As the *Forrest* court further observed, the ALJ's failure to provide detailed analysis at step three is no basis for relief if the ALJ "made sufficient factual findings elsewhere in [her] decision to support [her] conclusion at step three." *Id.* at 366. As the court recognized, there is "no need to require the ALJ

7

to spell out every fact a second time." *Id.* Here, the ALJ discussed the medical record in detail and articulated ample support for her determination that Plaintiff did not satisfy a listing, specifically noting in her step 2 analysis why Plaintiff did not meet the requirements of section 12.00 or section 1.00 in the Listings (PageID.38–42.) This determination is supported by substantial evidence, and Plaintiff's claim of error is rejected.

**3.**

As noted above, the ALJ concluded that Plaintiff retained the ability to perform light work subject to certain limitations. Plaintiff asserts several arguments that the ALJ's RFC determination is deficient, none of which the Court finds persuasive.

First, Plaintiff faults the ALJ for failing to afford the proper significance to Plaintiff's back, neck and shoulder impairments, claiming that the ALJ had gone "out of her way to minimize" the impairments. (PageID.478.) The Court is not convinced. The ALJ described Plaintiff's physical impairments throughout the sequential analysis. At step 2, for example, the ALJ found that Plaintiff suffered from the severe impairments of degenerative disc disease of the lumbar and cervical spines. (PageID.37.) At step 4, the ALJ noted that Plaintiff testified she had "constant pain in her back and neck, which was radiating to her right ear. She reported pain in her arms with difficulty using her hands due to her neck and shoulder pain." (PageID.41.) The ALJ determined, however, that Plaintiff could still perform a limited range of light work. The ALJ based her decision on a review of the objective medical evidence. Among other things, the ALJ noted a January 2011 MRI that revealed early degenerative disc disease, but no spinal canal stenosis or neuroforaminal stenosis in the lumbar spine. (PageID.41, 278.) Plaintiff complained of back and neck pain, as well as joint pain and swelling at an August 2012 visit with Dr. Andersen; however, a physical examination revealed a normal range of motion and muscle strength with no pain when inspected.

(PageID.382.) In June of 2013, Dr. David Rispler examined x-rays taken of Plaintiff's shoulders and diagnosed Plaintiff with joint pain, rotator cuff tendinitis, and cervical radiculopathy, but placed no functional restrictions on Plaintiff. (PageID.444.) The ALJ also gave "great weight" to the opinion of Dr. Shanti Tanna, M.D., a state agency medical consultant who determined that Plaintiff could perform a limited range of light work. (PageID.41, 94–96.) In sum, the ALJ did not go "out of her way to minimize" Plaintiff's impairments, and Plaintiff's physical RFC is supported by substantial evidence.

Second, Plaintiff argues the ALJ erred by dismissing her mental health impairments, specifically arguing that the ALJ overemphasized her gambling addiction while failing to adequately discuss her fatigue and anxiety. (PageID.478.) The Court again disagrees. As noted above, the ALJ found that Plaintiff's mental impairments did not amount to a severe impairment, finding that Plaintiff had only mild limitations in her activities of daily living, social functioning, and in concentration, persistence or pace. (PageID.38.) The ALJ went on to state that these mild limitations were reflected in the RFC assessment. (PageID.39.) The ALJ noted, for example, that Plaintiff reported to Dr. Andersen that although she had run out of her medication to treat her depression, she still felt "ok." (PageID.337.) Treatment records from Pine Rest demonstrate that Plaintiff learned skills to cope with anxiety and depression. (PageID.405.) At her last visit, Plaintiff stated she had undergone improvement in her mood and sleep, and had abstained from gambling since her last visit a month earlier. (PageID.407.) The ALJ noted that Plaintiff's activities of daily living also do not support a finding that she was as impaired as alleged. Plaintiff is able to prepare meals, clean, and do laundry. (PageID.238.) She can drive a car and go shopping. (PageID.239.) She talks with neighbors and uses a computer and phone to communicate with family and friends. (PageID.71, 240.) Regarding her fatigue, Plaintiff testified she experienced no side effects from her

medications. (PageID.61.) She experiences sleeplessness largely due to anxiety caused by family stressors, but is able to sleep when taking Ambien. (PageID.450) During a visit to treat her insomnia, Plaintiff denied napping during the day or daytime sleepiness. (PageID.450–51.) Test results indicated normal levels of sleepiness. (PageID.451.) All this provides substantial evidence supporting the ALJ's RFC determination.

Plaintiff relatedly claims that the ALJ's RFC discussion fails to satisfy social security ruling requirements that an ALJ include a narrative discussion of the evidence. (PageID.481.) According to SSR 96–8p, the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96–8p, 1996 WL 374184, at *7 (July 2, 1996). The ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved," discuss "why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence," "consider and address medical source opinions," and "[i]f the RFC assessment conflicts with an opinion from a medical source, . . . explain why the opinion was not adopted." *Id.* The Court finds the ALJ's RFC discussion satisfied this narrative requirement. As shown above, the ALJ thoroughly discussed both Plaintiff's physical and mental impairments and demonstrated why they led to a finding that Plaintiff was limited to light work. While the ALJ could have perhaps better organized the decision, the fact that it was not organized as Plaintiff would prefer does not warrant relief. The ALJ satisfied the discussion requirements by addressing the medical evidence and Plaintiff's credibility. *See Knox v. Astrue*, 327 F. App'x 652, 657 (7th Cir. 2009) (finding the discussion element satisfied by analyzing medical evidence and assessing credibility); *Blevins v. Astrue*, No. 4:08–CV–87–PRC, 2009 WL 2778304, at *14 (N.D. Ind. Aug.31,

2009) (same). In addition, the Court notes that Plaintiff simply argues that the discussion was insufficient, but points to no evidence that conflicts with the ALJ's RFC assessment, nor explains how she was prejudiced by the ALJ's alleged failure to discuss the issue more thoroughly. Thus, even if the ALJ's discussion was inadequate under SSR 96–8p, given that the ALJ's RFC is largely, even if not entirely, consistent with the opinions of the medical sources and the record as a whole, any such error was harmless. *See Williams v. Astrue*, No. 0:09–1971–TLW–PJG, 2010 WL 6297625, at *5 (D.S.C. Nov. 3, 2010) (finding that, even assuming the ALJ failed to comply with the discussion requirements of SSR 96–8p, any such error was harmless); *Freeman v. Barnhart*, No. 05–1287–JTM, 2006 WL 4059099, at *11 (D. Kan. Aug.2, 2006) (noting that because the RFC was generally consistent with the medical opinion evidence, failure to comply with SSR 96–8p's narrative requirements was arguably harmless, but declining to address the issue since the case was already being remanded on other grounds). Accordingly, Plaintiff's third claim of error is therefore rejected.

**4.**

At the administrative hearing, Plaintiff testified that she could not work due to pain in her neck and shoulders, as well as depression and anxiety. (PageID.60–61, 64.) Plaintiff claims the ALJ failed to adequately assess her subjective allegations.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added); *see also*, *Grecol v. Halter*, 46 F. App'x. 773, 775 (6th Cir., Aug. 29, 2002) (same). As the relevant Social Security regulations make clear, however, a claimant's "statements about [her] pain or other symptoms will not alone establish that [she is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997)

(quoting 20 C.F.R. § 404.1529(a)); *Hash v. Comm'r of Soc. Sec.*, 309 F. App'x 981, 989 (6th Cir., Feb. 10, 2009). Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Comm'r of Soc. Sec.*, 105 F. App'x 794, 801 (6th Cir. 2004).

The Sixth Circuit has repeatedly held that "[s]ubjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Id.* (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Id.*(citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) ("It is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations not fully credible, and that finding should not be disregarded lightly. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 780 (6th Cir. 1987). In fact, the Sixth

Circuit has recently described an ALJ's credibility findings are "virtually unchallengeable." *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013) (internal quotation marks omitted).

In support of his decision to discount Plaintiff's credibility, the ALJ noted that the medical record did not support Plaintiff's allegations. Among other things, the ALJ discussed objective tests that demonstrated Plaintiff had a full range of motion with her arms, and Plaintiff's reports that her fatigue was controlled with medication. Regarding her depression, Plaintiff felt okay, even without medication, and had a wide variety of daily activities that were inconsistent with the severity of impairments that she alleged. As noted above, the ALJ's reasons are supported by substantial evidence, and accordingly Plaintiff's claim of error is rejected.

## CONCLUSION

For the reasons set forth herein, the Commissioner's decision will be **AFFIRMED.** A separate judgment shall issue.

Dated:  March 31, 2016                                              /s/ Gordon J. Quist
                                                                              GORDON J. QUIST
                                                                    UNITED STATES DISTRICT JUDGE